**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Elizabeth Poole, | Case No. 2:24-cv-01981-CDS-BNW |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL (ECF NO. 52)** |
| Progressive Direct Insurance Company. | |
| Defendant. | |

Before this Court is Plaintiff's motion to compel, in which Plaintiff seeks disclosure of materials that Defendant claims are privileged. ECF No. 52. Defendant responded at ECF No. 63, and Plaintiff replied at ECF No. 68. This Court held a hearing on the motion, and it agreed to conduct an *in camera* review of the disputed materials. Having examined the contested documents and communications, this Court finds that the attorney-client and work-product privileges apply to only some of the materials listed in Defendant's privilege log and to the redactions in the claims file. Accordingly, this Court grants in part and denies in part Plaintiff's motion.

**I.    BACKGROUND**

The underlying action in this case arises from a car accident in September 2017 in which Assignor Rene Arguelles, Jr. crashed into Plaintiff Elizabeth Poole's vehicle, injuring her. ECF No. 1-1 at 6. The vehicle that Assignor was driving was insured by Defendant Progressive Insurance Company. *Id.* The insurance policy covered bodily injury up to $15,000 per person and $30,000 per accident. *Id.* Defendant paid the policy's limits. ECF No. 63 at 5.

In December 2018, Plaintiff filed a lawsuit against Assignor seeking damages above policy limits. ECF No. 1-1 at 10. In June 2021, Plaintiff served an offer of judgment inclusive of fees, costs, and prejudgment interest in the amount of $124,999.99 that Defendant did not accept on behalf of Assignor. *Id.* The case proceeded to trial in July 2021 which ultimately resulted in a verdict against Assignor in the amount of $168,529.62. *Id.* at 11. This amount was later reduced

to $137,802.44. *Id.* at 12. In 2022, Assignor assigned his rights against Defendant to Plaintiff. *Id.* Then in April 2023, Defendant paid $15,000 to Plaintiff in partial satisfaction of the judgment. *Id.*

In this action, Plaintiff alleges that Defendant failed to indemnify its insured following a state court judgment in excess of policy limits. ECF No. 52 at 7. Plaintiff filed her complaint in the Eighth Judicial District Court in September 2024, and the matter was removed to federal court in October 2024. ECF No. 1-1. Plaintiff alleges that Defendant has produced Assignor's claim file, but that it is heavily redacted. ECF No. 52 at 7. The redactions include communication between Defendant and Assignor and between Defendant and Keating Law Group.[1] Despite multiple requests for production of the complete unredacted claims file including emails, notes, reports, and communications between Defendant and its counsel, Defendant has continued to produce redacted files accompanied by a privilege log. *Id.* at 7–8. Accordingly, Plaintiff filed the present motion to compel in which she seeks the entire claims file, including the withheld documents, because she argues that neither the attorney-client privilege nor the work product doctrine apply.

This Court held a hearing on the motion on April 13, 2026. ECF No. 29. It heard arguments from both parties, and it narrowed the issues to whether the materials listed in Defendant's privilege log and materials redacted in the claims file were protected by either the attorney-client or work-product privileges. This Court ordered the parties to meet and confer within 10 days to determine what was still subject to redactions and to submit the highlighted portion of the file for *in camera* review. A few weeks later, Defendant produced the contested materials—consisting of 299 pages—for review. Based on the arguments in Plaintiff's motion to compel (ECF No. 52 at 13–14) and on the materials provided for *in-camera* review, the contested "Keating File" consists of two types of documents: (1) email communications between Keating law group and Defendant that Defendant has provided a privilege log for and (2) the claims file

---

[1] Defendant referred the claim matter to Keating Law Group for handling.

with the redacted information highlighted for this Court's review.[2] Having examined the materials in light of applicable law, this Court grants in part and denies in part Plaintiff's motion, as discussed in further detail below.

## II.  DISCUSSION

### A.  Legal Standard

The Federal Rules of Civil Procedure allow for broad discovery. Fed. R. Civ. P. 26(b)(1). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." *Id.* District courts have wide discretion to determine whether discovery is relevant. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Similarly, district courts have discretion to limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

As part of the discovery process, parties may serve written interrogatories and requests for production that relate to any matter within the scope of Rule 26(b). *Id.* 33(a), 34(a).  Responding parties must answer each interrogatory or request for production, and if they object, they must state the grounds for each objection with specificity. *Id.* 33(b), 34(b). When discovery disputes arise, a party may move for an order compelling discovery. *Id.* 37(a)(3)(B). The party resisting discovery has a "heavy burden" to show why the discovery should be denied. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Plaintiff moves this Court to order that no privilege applies to the communications and documents in Defendant's privilege log or the redacted claims file and to compel those materials. ECF No. 52 at 12–14. Regarding the attorney-client privilege, Plaintiff argues that this privilege never attached to the materials because the communications between Mr. Keating's office and Defendant were for the primary purpose of providing business advice or conducting investigative work. *Id.* at 13. Regarding the work-product doctrine, Plaintiff argues that the insofar as the

---

[2] Email communications included in the privilege log are cited by listed item number (e.g. "item number 1") and pages in the claims file are cited by their respective Bates stamps (e.g. DEF000200).

materials constitute opinion-work product, the mental impressions exception applies because the mental impressions at issue are material due to the nature of bad-faith settlement cases. *Id.* at 15–17. Plaintiff also argues that the materials are not protected as ordinary work product because the materials were generated in the ordinary course of business rather than for the purpose of litigation.

As mentioned above, both parties agreed that this Court should conduct an *in camera* review of the at-issue documents, and this Court concurred. After reviewing the parties' arguments and the relevant caselaw, this Court adopted the following analytical approach for its *in camera* review. First, did the attorney-client privilege attach to the materials? Second, for those materials in which the attorney-client privilege did not attach, were the materials prepared in anticipation of litigation such that they constituted work product? Third, for those materials constituting work product, were they opinion-work product? And fourth, for those materials that constituted work product and opinion-work product, did Plaintiff show that the applicable exception applied such that the materials should be disclosed? The Court answers each of these questions below.

### B. Attachment of Attorney-Client Privilege

In federal cases based on diversity jurisdiction, courts apply state law to claims of attorney-client privilege. *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1328 (9th Cir. 1995); *Spargo v. State Farm Fire & Cas. Co.*, No. 2:16-cv-03036-APG-GWF, 2017 WL 2695292, at *8–9 (D. Nev. June 22, 2017). Under Nevada law, the attorney-client privilege applies to confidential communications between an attorney and client made for the purpose of facilitating the rendition of professional legal services. *Wynn Resorts, Ltd. v. Eighth Judicial Dist. Court*, 399 P.3d 334, 341 (Nev. 2017); *see also* Nev. Rev. Stat. § 49.095. Nevada courts follow a majority of other courts in finding that privileges "should be interpreted and applied narrowly." *Canarelli v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 464 P.3d 114, 120 (Nev. 2020).

When asserting the attorney-client privilege, the burden rests on the defendant. The defendant must show that "the evidence is privileged and that the defendant has not waived that privilege." *Gibbs v. State*, 140 Nev. Adv. Op. 13, 543 P.3d 1185, 1188 (2024) (citing *Canarelli*,

136 Nev. at 252, 464 P.3d at 120). Courts in this district have found that parties usually attempt to satisfy this burden through a privilege log. *See Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 627 (D. Nev. 2013). Here, Defendant submitted its privilege log and argued both in its opposition to Plaintiff's motion to compel (ECF No. 63) and at the April 13, 2026, hearing that the claims file had to be redacted to preserve attorney-client privilege and because the entries were protected as work product.

Determining whether the attorney-client privilege applies to dual-purpose communications, that is, communications that implicate both legal and business concerns, can be particularly challenging. This challenge extends to the insurance context, where counsel often wears two hats: one as claims handler and one as attorney. *See Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, No. 2:05-cv-01318-BES-GWF, 2006 WL 3149362, at *12 n.7 (D. Nev. Nov. 1, 2006). The line between an attorney engaging in routine claim handling versus rendering legal advice is often unclear. *See id.* Because the Nevada Supreme Court has not provided guidance on how to demarcate claim handling from legal advice in the context of attorney-client privilege, this Court looks to decisions in the Ninth Circuit and this district. *See Phillips*, 290 F.R.D. at 627 (citing *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980)) ("In the absence of controlling law, the court must look to decisional law in the Ninth Circuit, district courts in the Ninth Circuit, and in some circumstances, other circuits and district courts outside of the Ninth Circuit to provide a framework for approaching these issues.").

In *In re Grand Jury*, the Ninth Circuit squarely addressed the issue of when the attorney-client privilege applies to dual-purpose communications. 23 F.4th 1088, 1090 (9th Cir. 2021). Considering the privilege's purpose of "providing a sanctuary for candid communications about any legal matter," the Ninth Circuit held that courts should apply the primary-purpose test to decide when the attorney-client privilege protects dual-purpose communications. *Id.* at 1092–93. Under this test, "courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or tax advice." *Id.* at 1091. The Ninth Circuit observed that the "natural implication of this inquiry is that a dual-purpose communication can only have a single 'primary' purpose." *Id.* It left open the question of whether the "a primary-

purpose test," as explained by the D.C. Circuit Court in *In re Kellog Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014), should apply. *Id.* at 1094.

Additionally, information such as the identity of the client, the amount of the fee, and the general purpose of the work performed is not privileged. *See e.g.*, *United States v. Carillo*, 16 F.3d 1046, 1050 (9th Cir. 1994). Similarly, when an attorney is merely communicating information, such communications between an attorney and a client are not privileged. *See United States v. Gray*, 876 F.2d 1411, 1415–16 (9th Cir, 1989).

This Court applies the following rules to its *in camera* review of documents. No attorney-client privilege will attach to communications and documents in which the attorney acts only as a claims adjuster. However, the attorney-client privilege will attach to communications and documents in which the attorney acts purely in his capacity as a lawyer by "facilitating the rendition of professional legal services." *See* Nev. Rev. Stat. § 49.095. For communications and documents in which the attorney is acting in a dual role as a claims adjuster and attorney, the Court will consider the primary purpose of the document or communication consistent with Ninth Circuit's decision in *In re Grand Jury*. 23 F.4th 1088 (9th Cir. 2021).

Here, the majority of the documents are not protected by attorney-client privilege because they consist of materials Plaintiff already possesses or facts that are not independently protected by the attorney-client privilege. Still, this Court finds that some of the documents are protected because the primary purpose of the communications is legal advice. To note, item number 19 is missing from the documents submitted to this Court for *in camera* review. So, this Court disregards it.

First, the Court finds that the following groups of documents are not privileged:

- Group 1: Materials already in Plaintiff's possession. Only item number 84 is in this group. This document is not attorney-client privileged because it is not a confidential communication as Plaintiff purposefully shared it with Defendant. *See* Nev. Rev. Stat. §§ 49.055, 49.095, 49.385.

- Group 2: Materials in which the primary purpose of the communications is claims handling. These materials include item numbers 2, 8–9, 11, 16–17, 36, 37, 40–41,

50 (emails containing confidential communications between Ms. Northway and Defendant), item numbers 1, 38 (emails containing confidential communications between Mr. Keating and Defendant), DEF000167, DEF000170, DEF000199, DEF000204, (claim file description of attorney-client communications), item 79, DEF000160–162, DEF000168–169, DEF000173–174, DEF000176, DEF000221, (internal Defendant company communications regarding the claim) For example, item numbers 8 and 9 include an email and attached correspondence that discusses receiving the Gieco claims file and the medical treatment that claim may detail. These documents relate to medical reports and medical records associated with claims. The documents do not contain legal advice regarding those reports, or records. Therefore, claim handling is the primary purpose of these communications as opposed to professional legal services.

- Group 3: Materials that are confidential communications that merely communicate information. *See United States v. Gray*, 876 F.2d 1411, 1415–16 (9th Cir, 1989). These materials include: item numbers 3–4, 6–7, 10, 12–15, 18, 20–23, 25, 27–29, 35, 39, 42–46, 48–49, 51–56, 58–65, 67, 69–72, 74–75, 78, 80, DEF000194, (emails or claims files that summarize emails merely directing the recipient to "please see attached"), 66, 68, 73, 81–82, 94–97, 99–103, 109–115 (email chains that provide basic information regarding case updates) and DEF000182, DEF000184, DEF000188–192, DEF000195, DEF000200–203, DEF000207, DEF000215, DEF000217, DEF000220, DEF000230–231, DEF000235, DEF000237–243, DEF000246, DEF000252, DEF000255–258 (claims notes that include emails or summaries of communications regarding case updates). For example, DEF000191 includes an entry that states when Plaintiff's initial disclosures are due. Therefore, these documents are not attorney-client privileged because they were made for the purposes of sharing information, not to give or receive legal advice.

Second, this Court finds that the following documents are protected by the attorney-client privilege: item numbers 24, 26, 30–34, 47, 57, 76–77, 83, 85–90, 98, 104–108 (email chains and attachments containing communications between Mr. Keating, Ms. Northway, and/or Mr. Keating's legal assistant and Defendant), and DEF000183, DEF000186–187, DEF000193, DEF000197–198, DEF000205–206, DEF000209–213, DEF000216, DEF000218–219, DEF000222–224, DEF000232–234, DEF000244–245, DEF000247–248, DEF000250, DEF000259–260 (claim file summaries of attorney-client communications) . These materials include email chains and summaries of communications between Mr. Keating, Ms. Northway, and/or Mr. Keating's legal assistant and Defendant in which the primary purpose of the communication is "facilitating the rendition of professional legal services." *See* Nev. Rev. Stat. § 49.095 (protecting communications between client and representative of the lawyer); *Id.* § 49.095 (defining "representative of the lawyer" as a person employed by the lawyer to assist in the rendition of professional legal services). In contrast to the group three documents (above), the primary purpose of these documents is legal advice. For example, item numbers 105–108 include email chains between Mr. Keating and Defendant in which the primary purpose of the emails is to covey legal advice to Defendant regarding attorney's fees and costs. And DEF000218–219 for example, includes another email chain and a summary of a phone call between Ms. Northway and Defendant in which Ms. Northway conveys legal advice to Defendant regarding settlement. Because these materials meet the requirements under NRS § 49.095 and because their primary purpose is to provide and/or obtain legal advice, this Court finds that these are protected by the attorney-client privilege.

Third, this Court finds that the following documents generally are not protected by the attorney-client privilege but that certain portions are the documents are protected. Item numbers 5, 91–93 and DEF00180, DEF000196, DEF000208, DEF000214, DEF000225, DEF000226, DEF000227, DEF000228–229, DEF000249, DEF000251, DEF000253, and DEF000254 contain emails in an email chain or portions of the claim file with entries that describe confidential communications between Defendant and its legal counsel that have the primary purpose of

providing and/or obtaining legal advice. Accordingly, the emails and entries should be redacted as follows:

- Item number 5: page 3, everything under the "Litigation Plan" may be redacted.
- Item numbers 91, 92, and 93: the email in the chain dated 7/7/2021 may be redacted.
- DEF000180: The second entry (1/25/2019) may remain redacted
- DEF000196: The first entry (10/24/2019 10:24 AM CT) may remain redacted.
- DEF000208: The first entry (continued from DEF000207, 6/30/2020) after "not that I recall" may remain redacted.
- DEF000214: The first entry (continued from DEF00021, 10/15/202 3:49 PM CT) after "Total specials $32,460.96" may remain redacted.
- DEF000225: The second entry (4/19/2021) may remain redacted.
- DEF000226: The third (5/14/2021, 12:31 PM CT) and fourth (5/14/2021, 4:22 PM CT) entries may remain redacted.
- DEF000227: The third entry (5/24/2021, 6:11 PM CT) may remain redacted.
- DEF000228: The last entry (6/16/2021, 5:22 PM CT) may remain redacted.
- DEF000229: The first entry (continued from DEF000228, 6/16/2021 5:22 PM CT)) may remain redacted.
- DEF000249: The first entry (continued from DEF000248 2/23/2022) may remain redacted.
- DEF000251: The first entry (continued from DEF000250 3/21/2022) may remain redacted.
- DEF000253: The first entry (continued from DEF000252 5/5/2022) may remain redacted.
- DEF000254: The second entry (9/1/2022 5:26 PM CT) may remain redacted.

## C. Work-Product Doctrine

Unlike the attorney-client privilege, federal law governs the work-product privilege in diversity suits. *Frontier Refining, Inc. v. Gorman–Rupp, Inc.*, 136 F.3d 695, 702 n.10 (10th Cir.

1998); *see also In re California Pub. Utilities Comm'n*, 892 F.2d 778, 778–81 (9th Cir. 1989) (applying federal law to discussion of work-product in a diversity action). Under Federal Rule of Civil Procedure 26, discovery is protected work product if it is "prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. Pro. 26(b)(3)(A). As the Ninth Circuit has stated, "the primary purpose of the work product rule is to 'prevent exploitation of a party's efforts in preparing for litigation.'" *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) (quoting *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989)). Material is protected under this doctrine when "it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004). The party claiming the work-product privilege has the burden of proving that the doctrine applies to the at-issue communications or documents. *Spargo v. State Farm Fire & Cas. Co.*, No. 216-cv-03036-APG-GWF, 2017 WL 2695292, at *2 (D. Nev. June 22, 2017) (citing *Kandel v. Brother Intern. Corp.*, 683 F.Supp.2d 1076, 1083–84 (C.D. Cal. 2009)).

Rule 26(b)(3) distinguishes between ordinary work product and opinion work product. As mentioned above, ordinary work product is material prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(A). The requesting party may discover ordinary work product if it shows a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* 26(b)(3)(A)(ii). But "if the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* 26(b)(3)(B). The Ninth Circuit has held that a requesting party may only discover opinion work product if it shows that the "mental impressions are at issue in a case and the need for the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).

In insurance cases involving bad-faith claims, the "strategy, mental impressions, and opinions of [the insurer's claim adjusters or agents] concerning the handling of the claim are

directly at issue." *Id.* at 577 (citing *Reavis v. Metropolitan Property & Liability Ins. Co.*, 117 F.R.D. 160, 164 (S.D. Cal. 1987) (emphasis added)). And, if the information is not available elsewhere, the plaintiff may be able to establish a compelling need for the material. *Id.* Importantly, however, the "right to discover the opinions and mental impressions of the *insurer's claims adjusters* does not mean, however, that she is entitled to obtain the confidential opinions, mental impressions or legal theories of the *insurer's attorney*." *Spargo v. State Farm Fire & Cas. Co.*, No. 2:16-cv-03036-APG-GWF, 2017 WL 2695292, at *3 (D. Nev. June 22, 2017) (emphasis added). Put differently, even if a party meets the test to compel disclosure of opinion work product, this showing does not provide a legal basis for piercing the attorney-client privilege. *Id.* (citing *Siddall v. Allstate Ins. Co.*, 15 Fed. Appx. 522, 522 (9th Cir. Aug. 1, 2001) (unpublished memorandum)). In sum, "although the work product doctrine may not protect the attorney's mental impressions and opinions from being discovered in a bad faith action, they may still be protected under the attorney-client privilege." *Id.*

Post-*Spargo* opinions in this district have further clarified the often-muddled overlap between opinion-work-product privilege and attorney-client privilege. *See Wood v. Nautilus Co.*, No. 2:17-cv-02393-MMD-DJA, 2021 WL 5415330, at * (D. Nev. Nov. 18, 2021). In *Wood*, then-Chief District Judge Miranda Du explained that while the work-product doctrine may protect the determinations of an insurer's attorney, "discovery of an insurer's attorney's mental impressions requires waiver of the attorney-client privilege." *Id.* at *3–4; *see also Torgerson v. State Farm Mut. Auto. Ins. Co.*, No. 3:21-cv-00452-LRH-CSD, 2023 WL 6807111, at *4 (D. Nev. Oct. 16, 2023). It follows here that the work-product doctrine *may* protect material involving the mental impressions of Mr. Keating or Ms. Northway in which the attorney-client privilege never attached. But Plaintiff cannot use the exceptions to the work-product doctrine to pierce materials involving Mr. Keating or Ms. Northway's mental impressions that this Court has already determined are protected by the attorney-client privilege.

Here, many of the communications in the privilege log and documents in the claims file are not work product. As discussed above, this Court will not consider whether the attorney-client

privileged materials are also protected under the work-product because Plaintiff cannot pierce attorney-client privilege under the work-product exceptions.

First, Plaintiff already possesses item number 84 which reflects an offer of judgment that Plaintiff made. Accordingly, item number 84 is not protected work product as it is neither ordinary-work product prepared "in anticipation of litigation" nor opinion-work product that contains an attorney's "mental impressions, conclusions, opinions, or legal theories" regarding litigation. Fed. R. Civ. P. 26(b)(3)(A)–(B).

Next, this Court looks to the emails and claims file summaries of communications between Mr. Keating, Ms. Northway, and/or Mr. Keating's legal assistant and Defendant in which the primary purpose of the communication or document was either claims handling or to communicate information. The documents submitted for *in camera* review indicate that Defendant was aware of Assignor's position regarding settlement around July 1, 2021. DEF000233. It also indicates that shortly after, on July 7, 2021, Defendant became aware of adversity in regard to how it was handling the claim. DEF000234.  (summarizing a phone call in which counsel notified Defendant that Plaintiff's attorney sent a letter alleging that Defendant was mishandling the claim).

"In the context of insurance claim disputes, the nature of the insurer's activity may eventually develop into activity undertaken in anticipation of litigation where a sufficient degree of adversity arises between the insurer and the insured or claimant." *OOIDA Risk Retention Group, Inc. v. Bordeaux*, No. 3:15-cv-00081-MMD-VPC, 2016 WL 427066, at *8 (D. Nev. Feb. 3, 2016). In determining the point in time at which an insurer's activity shifts from ordinary course of business to actions taken in anticipation of litigation, a court must determine, "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of the prospect of litigation*." *Id.* (citing *Moe v. System of Transport, Inc.*, 270 F.R.D. 613, 625 (D. Mont. 2010)).  Thus, although most of the communication between Mr. Keating, Ms. Northway, and/or Mr. Keating's legal assistant and Defendant was done in the ordinary course of business for the original car crash

claim, it is reasonable to conclude that some claim file entries and emails were in anticipation of possible bad-faith litigation.

Rule 26 protects materials that were created because of anticipated litigation. *See In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004). The rule for claim files is no different. *See Century-Nat'l Ins. Co. v. Gardner*, No. 2:18-cv-02090-APG-BNW, 2019 WL 8128167, at *3 (D. Nev. Sept. 20, 2019). While claim files "generally do not constitute work product in the early stages of a claims investigation," they are protected "once litigation is imminent." *Abueg v. State Farm Mut. Auto. Ins. Co.*, No. 2:14-cv-00635-GMN-GWF, 2014 WL 5503114, at *4 (D. Nev. Oct. 30, 2014). (internal citations omitted). Here, the materials in this group that were created before July 7, 2021, are not protected by the ordinary-work-product doctrine because there is no indication that Defendant anticipated litigation before this point. These documents include item numbers : 1–4, 6–9, 10–12, 13–17, 18, 20-23, 25, 27–29, 35–39, 40–46, 48–56, 58–75, 78–82, 85 and DEF000160-162, DEF000167-170, DEF000173-174, DEF000176, DEF000182, DEF000184, DEF000188–192, DEF000194–195, DEF000199, DEF000200–204, DEF000207, DEF000215, DEF000217, DEF000220–221, and DEF000230–331. Moreover, because these documents were not created in anticipation of or in the course of litigation, they are also not protected as opinion-work product because any "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative" do not "concern[] the litigation." *See* Fed. R. Civ P. 26(b)(3)(B); *see also Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) (requiring documents to be prepared in anticipation of litigation to qualify as work product).

Conversely, the following documents were created after July 7, 2021, when Defendant became aware of adversity based on how it handled the claim, but before Plaintiff filed her lawsuit on September 23, 2024.

- Item numbers 94–96, DEF000237–238 (discussing updates regarding jurors and reimbursement in trial), item numbers 99–103, 109–111, 113–115 and DEF000256 (requesting and providing case updates), and item number 100 (directing the recipient to see an attachment provided by Plaintiff's counsel) do not relate to the

bad-faith failure to settle claim. Therefore, it cannot be said that but for litigation, these materials would not have been created in substantially similar form. *See In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004). These materials are not protected as work product and must be disclosed.

- DEF000235 (referring to the letter alleging that Defendant mishandled the claim), item number 97 and DEF000239-240, DEF000242–243, DEF000246, DEF000255, DEF000257 (discussing the jury award, fees and costs, and the payment of a partial satisfaction of judgment), and item number 112 and DEF000252, DEF000258 (discussing settlement conference and settlement payout) relate to potential settlement efforts as well as the judgment against Assignor as a result of the original car crash litigation. Because this is a bad-faith, failure to settle claim, it can be assumed that these communications were made at least partially in anticipation of litigation. However, these materials do not contain the mental impressions, opinions, etc. of Mr. Keating or Ms. Northway, and thus are not opinion-work product. To discover this document, Plaintiff must show that she has a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Here, Plaintiff makes a showing that the entries contain information for which Plaintiff has a substantial need given that they relate to her allegations that Defendant acted in bad faith, but she fails to make a showing that without undue hardship she is unable to obtain their substantial equivalent by other means. These documents will remain protected under the ordinary-work-product doctrine.

- DEF000241 was created after July 1, 2021, but before Plaintiff filed her lawsuit, and involves discussion regarding partial satisfaction of judgment. This discussion includes information that could potentially support Plaintiff's argument that Defendant failed to settle in bad faith. Moreover, this document contains the strategy of Defendant concerning litigation. Therefore, it is opinion-work product.

To discover this document, Plaintiff must show that the mental impressions are at issue and the need for the material is compelling. *See Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992). Here, the strategy of Defendant is directly at issue because it is an insurance case involving bad-faith claims. *See id.* Additionally, Plaintiff's need for this evidence is compelling because this Court is unaware of where else she might discover this information. In sum, item number DEF000241 is not protected by the work-product privilege and will be disclosed.

- This Court previously held that some of the entries in item numbers 5, 91-93 and DEF000196, DEF000208, DEF000214, DEF000225, DEF000226, DEF000227, DEF000228–229, DEF000249, DEF000251, DEF000253, and DEF000254 were protected by the attorney-client privilege. The remaining entries, however, may be protected under the work-product doctrine. Item number 5 and DEF000196, DEF000208, DEF000214, and DEF000225–229 were all created before July 7, 2021. These materials are not protected by the ordinary-work-product doctrine because there is no indication that Defendant anticipated litigation before this point. Additionally, they are not protected as opinion-work product. *See* Fed. R. Civ P. 26(b)(3)(B); *see also Holmgren*, 976 F.2d at 576. As such, item number 5 and DEF000196, DEF000208, DEF000214, and DEF000225–229 are not work product, and the emails and portions of the claims files that are not listed to be redacted due to attorney-client privilege shall be unredacted.

- Item numbers 91–93 and DEF000249, DEF000251, DEF000253, and DEF000254 were created after July 7, 2021, but before September 23, 2024. The non-privileged portions of item numbers 91–93, DEF000251, and DEF000253 relate to discussions regarding settlement and the adversity between claimant and Defendant. But the claim entries and emails that are not otherwise protected by attorney-client privilege do not reflect the mental impressions and conclusions of Defendant concerning litigation. Therefore, these work product materials are not

opinion-work product materials. To discover these documents, Plaintiff must show that she has a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Here, Plaintiff makes a showing that the entries contain information for which Plaintiff has a substantial need given that they relate to her allegations that Defendant acted in bad faith, but she fails to make a showing that without undue hardship she is unable to obtain their substantial equivalent by other means. Accordingly, the relevant emails in the entries may be redacted, and the entries in the above documents may remain redacted.[3]

- The only remaining document that was partially redacted due to privilege and was created after July 1, 2021, but before September 23, 2024, is DEF000249. The non-privileged portion of this document contains information that does not relate to the bad-faith claim. Therefore, it cannot be said that but for litigation, this document would not have been created in substantially similar form. *See In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004). The non-privileged portions of DEF000249 are not work product and the portions of the claims document that are not redacted due to privilege as outlined above must be unredacted.

Finally, this Court turns to documents that are not communications between Keating Law Group and Defendant, and which have the primary purpose of claims handling. These entries were made by Defendant in the ordinary course of claims handling. These materials include DEF000149–150, DEF000154, and DEF00181. Further, these materials were made before

---

[3] This Court notes, however, that Defendant has redacted parts of email addresses and phone numbers in the claims file. Defendant has not provided argument as to why some email addresses and phone numbers are protected under the attorney-client privilege or the work product doctrine. Accordingly, Defendant must unredact email addresses and phone numbers in the claims file. Insofar as the claims file includes personal information such as social security numbers, dates of birth, or home addresses, these may be redacted. *See* LR IC 6-1.

litigation began on the underlying car crash action and cannot be said to have been made in anticipation of litigation for bad faith failure to settle. Thus, these documents are not protected by the work-product privilege and will be disclosed.

**III.    CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel (ECF No. 52) is GRANTED in part and DENIED in part consistent with the above.

IT IS FURTHER ORDERED that Defendant must produce the following documents to Plaintiffs within 14 days of entry of this order: item numbers 1–4, 6–23, 25, 27–29, 35–39, 40–46, 48–56, 58–75, 78–82, 84, 94–96, 99–103, 109–111, 113–115 and DEF000149–150, DEF000154, DEF000160–162, DEF000167–170, DEF000173–174, DEF000176, DEF000181–182, DEF000184, DEF000188–192, DEF000194–195, DEF000199, DEF000200–204, DEF000207, DEF000215, DEF000217, DEF000220–221,  DEF000230–231, DEF000237–238, DEF000241, and DEF000256.  Before producing these documents, however, Defendant must review them and redact any personal-data identifiers. *See* LR IC 6-1.

IT IS FURTHER ORDERED that the following documents must be produced, consistent with this Court's redactions, within 14 days of entry of this order: item numbers 5, 91–93 and DEF000180, DEF000196, DEF000208, DEF000214, and DEF000225–229, DEF000249, DEF000251, DEF000253, and DEF000254.

IT IS FURTHER ORDERED that the following documents will remain privileged: item numbers 24, 26, 30–34, 47, 57, 76–77, 83, 85–90, 98, 104–108 and DEF000183, DEF000186–187, DEF000193, DEF000197–198, DEF000205–206, DEF000209–213,  DEF000216, DEF000218–219, DEF000222–224, DEF000232–234, DEF000244–245, DEF000247–248, DEF000250, and DEF000259–260.

//

//

//

//

IT IS FURTHER ORDERED that the following documents will remain protected under the work product doctrine: item numbers 97, 112 and DEF000235, DEF000239–240, DEF000242–243, DEF000246, DEF000252, DEF000255, and DEF000257–258.

DATED this 19th day of May 2026.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE